# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **ARCHITECTURAL GRANITE & MARBLE, LLC,** | § | |
| **PLAINTIFF/COUNTER-DEFENDANT** | § | |
| | § | |
| | § | |
| **AND** | § | |
| | § | |
| **SELECT INTERIOR CONCEPTS, INC.,** | § | **CASE NO. 3:20-CV-295-L-BK** |
| **COUNTER-DEFENDANT,** | § | |
| | § | |
| **V.** | § | |
| | § | |
| **PARMINDER PENTAL,** | § | |
| **DEFENDANT/COUNTER-PLAINTIFF.** | § | |

## ORDER

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 74, before the Court is Defendant's *Motion to Compel Discovery Responses and for Attorneys' Fees and Costs*, Doc. 68.  For the reasons that follow, Defendant's motion is **GRANTED IN PART**.

## I.    BACKGROUND

Plaintiff, Architectural Granite & Marble, LLC ("AGM"), asserts in the operative complaint that it acquired Defendant's business, Pental Granite and Marble, LLC ("PGM"), complete with PGM's associated goodwill and confidential information, for $85 million on February 28, 2017.  Doc. 40 at 4-5.  As part of the acquisition, Defendant accepted a job with AGM to help integrate and grow the combined business.  Doc. 40 at 1.  Defendant also agreed that, for a period of four years from February 28, 2017, he would, *inter alia*, (1) keep confidential certain of AGM's proprietary information such as trade secrets and financial and marketing strategies, (2) refrain from soliciting

any of AGM's employees for employment, and (3) not compete with AGM (the "Purchase Agreement"). Doc. 40 at 1, 5-6.[1]

AGM alleges that in December 2018, Defendant began emailing himself AGM's confidential information, including its inventory, price lists, supplier contact information, and the like. Doc. 40 at 1-2 (alleging Defendant took "(1) records of [AGM's] detailed inventory, by product and location, for every location for a two-year period, (2) price lists for all of [AGM's] product offerings, (3) contact information for more than 220 of [AGM's] international suppliers, and (4) key business correspondence and negotiations with [AGM's] primary international supplier for its National distributor"). Defendant resigned from his position on February 8, 2019. Doc. 40 at 11.

AGM avers that in August 2020, Defendant and a former AGM employee, Luke Spiller, formed Stratus Surfaces ("Stratus"), which directly competes with AGM. Doc. 40 at 3. AGM then brought this action against Defendant, alleging he had breached various provisions in the Purchase Agreement and Employment Agreement, including by violating his fiduciary duties and misappropriating trade secrets. Doc. 40 at 7, 9-14. Defendant counter-sued both AGM and its parent entity, Select Interior Concepts ("SIC," collectively, "Plaintiffs" ), alleging that: (1) Plaintiffs retaliated against him for engaging in protected conduct in violation of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. §1514A;[2] (2) AGM violated his Employment Agreement by not paying him

---

[1] A separate contract similarly provided that Defendant would not "[p]repare to engage in, engage in, or assist others in engaging in competition" with Plaintiff's business during Defendant's tenure and for one year following the termination of his employment (the "Employment Agreement"). Doc. 40 at 8-9. The one-year noncompete provision in the Employment Agreement expired on February 8, 2020.

[2] SOX prohibits a publicly traded company from retaliating against an employee who reports information to a supervisor "regarding any conduct which the employee reasonably believes constitutes a violation" of one of six enumerated categories. Allen v. Admin. Rev. Bd., 514 F.3d 468, 477 (5th Cir. 2008) (quoting 18 U.S.C. § 1514A(a)(1)).

severance and his accrued benefits when he resigned; and (3) he is entitled to a declaratory judgment that the Employment Agreement and Purchase Agreement are unenforceable. Doc. 56 at 40-47.

Regarding his SOX claim, Defendant asserts that Plaintiffs retaliated against him for his "whistleblower" activities regarding a "sham sale" designed to increase SIC's revenue in preparation for an anticipated initial public offering ("IPO"). Doc. 56 at 25. Specifically, Defendant avers as follows: In late 2017, AGM had begun evaluating Elegant Home Design, L.L.C. d/b/a Bedrock International ("Bedrock") for acquisition around the same time SIC was preparing for the IPO. Doc. 56 at 25. In an effort to boost SIC's revenue, Plaintiffs "fixed the books" to make it look as though AGM was selling its MetroQuartz products to Bedrock for an inflated price of roughly $2 million. Doc. 56 at 25-26. The proposed $2 million sale would result in adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") of 25 percent on Plaintiffs' books as opposed to the prior EBITDA of 13 percent. Doc. 56 at 27. By the time the acquisition of Bedrock was consummated, however, the "sale" of the MetroQuartz products became an intercompany transfer between SIC subsidiaries rather than an actual sale. Doc. 56 at 28. Thus, the "sale" took place only on paper, with AGM giving MetroQuartz to Bedrock and recognizing approximately $2 million in revenue on its books, but AGM never received any sale proceeds from Bedrock. Doc. 56 at 27-29.

Defendant avers that SIC filed a registration statement with the Securities and Exchange Commission ("SEC") related to the public offering, but falsely represented that its intercompany accounts and transfers were excluded from the financial information. Doc. 56 at 30. Shortly thereafter, Defendant and Spiller spoke with Tyrone Johnson, the CEO of SIC. Doc. 56 at 31. The parties' recollections of the call differ. Johnson says Defendant and Spiller expressed concern about their personal exposure given Bedrock's owner's threats to sue Plaintiffs. Doc. 79 at 5. On the other hand, Defendant claims that he acted as a whistleblower during this call and voiced concerns about the legality of the Bedrock transaction. Doc. 56 at 31. Defendant contends that following this

3

protected activity, Plaintiffs "pushed him out of the business."  Doc. 56 at 35.  After leaving the

company, Defendant notified the SEC about the Bedrock transaction, and the SEC is investigating his

allegations.  Doc. 79 at 5 n.3.  In due course, these motions followed.

## II.  APPLICABLE LAW

The Federal Rules of Civil Procedure specify the scope of discovery in all civil cases.  Unless

otherwise limited by the court,

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any
> party's claim or defense and proportional to the needs of the case, considering the
> importance of the issues at stake in the action, the amount in controversy, the parties'
> relative access to relevant information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden or expense of the proposed
> discovery outweighs its likely benefit.  Information within this scope of discovery need
> not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).  More simply, under Rule 26(b)(1), a discoverable matter must be relevant

and proportional to the needs of the case.  *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D.

250, 279 (N.D. Tex. 2017).  "To be relevant under Rule 26(b)(1), a document or information need

not, by itself, prove or disprove a claim or defense or have strong probative force or value."  *Id.* at

280.  Discovery is relevant if it "has any tendency to make a fact more or less probable than it would

be without evidence" and the "fact is of consequence in determining the action."  FED. R. EVID. 401.

The party opposing discovery bears the burden of showing that the discovery sought is not relevant or

is otherwise objectionable.  *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 224 (N.D.

Tex. 2016).

## III.  DEFENDANT'S MOTION TO COMPEL

Defendant seeks to compel discovery as to five subjects which are addressed in sequence

*infra*.

A. *Timing of Discovery Regarding Damages*

Defendant asserts that the Court should order AGM to answer interrogatories and produce documents showing the factual basis for its claim that Defendant "*used* the 'confidential' information" and how this resulted in damages to AGM.  Doc. 68-1 at 7 (emphasis in original).  This discovery request is embodied in requests for production ("RFPs") 23 and 24 and interrogatories 17(a) and 18.  Doc. 68-1 at 8-9; Doc. 68-2 at 15-16, 27-28.

As a general matter, Plaintiffs argue that Defendant's motion on this topic is premature because discovery regarding damages is ongoing and Defendant's expert continues to locate and turn over relevant records.  Doc. 79 at 9-10.  Defendant, however, maintains that AGM cannot wait until its expert completes its report to provide information regarding its claimed damages.  Doc. 68-1 at 11.  These discovery requests are embodied in RFPs 25 and 27 and interrogatory 19.  Doc. 68-1 at 11-13.

On this point, the Court finds that Defendant's position is correct.  *See LW Air I, L.L.C. v. Air 7, L.L.C.*, No. 3:16-CV-00546-L, 2017 WL 3209398, at *1 (N.D. Tex. Apr. 20, 2017) (Stickney, J.) (holding that "a party must, without awaiting a discovery request, provide to the other parties: . . . a computation of each category of damages claimed by the disclosing party[.]" (quoting FED. R. CIV. P. 26(a)(1)(A)(iii)); *see also Tendeka, Inc. v. Glover*, No. H-13-1764, 2015 WL 2212601, at *16 (S.D. Tex. May 11, 2015) ("A party claiming damages has the obligation, when it makes its initial disclosures, to disclose to the other parties the best information then available to it concerning that claim, however limited and potentially changing it may be.") (quotation omitted)).

As such, the discovery Defendant seeks here should have already been provided to him and then subsequently as necessary.  *See* FED. R. CIV. P. 26(e) (requiring parties to supplement their initial disclosures under Rule 26(a) if they learn the information previously disclosed is incomplete or incorrect and the new information has not otherwise been made known to the other parties); FED. R. CIV. P. 26(e)(2) ("For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's

duty to supplement extends both to information included in the report and to information given during the experts deposition.").  The requirements of Rule 26 would be rendered a nullity if parties did not have to disclose their expert's damages calculations until the close of discovery.  Thus, Defendant's motion to compel as to this subject matter is **GRANTED**.[3]

### B. Valuation of PGM

Defendant next argues the Court should compel AGM to produce its valuation, with amortization, of PGM's "intangible assets" and the goodwill it acquired from Defendant when it purchased PGM.  Doc. 68-1 at 13.  He asserts this information is relevant because AGM ascribed a value of more than $60 million to PGM's "intangible assets and goodwill, including confidential information and trade secrets."  Doc. 68-1 at 13.  This discovery request is embodied in RFPs 25 and 27 and interrogatories 17(b), 17(c), and 20.  Doc. 68-1 at 13-14; Doc. 68-2 at 16-18, 27, 30.  Plaintiffs counter that Defendant admitted the documents are not relevant or proportional to the needs of the case and, in any event, the Purchase Agreement reflects the collective amount paid to Defendant for PGM.  Doc. 79 at 13-14.

First, it is not accurate for Plaintiffs to characterize Defendant's discovery responses as an admission this information is irrelevant.  *Cf.* Doc. 79-4 at 3 (Defendant's Objection to Plaintiffs' Discovery Request).  Indeed, the valuation is relevant because Plaintiffs have the burden to prove their own damages.  The valuation of the intangible assets and goodwill is particularly relevant here because AGM purchased PGM for approximately $85 million and is alleging that the vast majority of that figure is based on such assets.  *See, e.g.*, *In re Stone Panels, Inc.*, 2021 WL 4436166, at *8 (N.D. Tex. Sept. 27, 2021) (finding that balance sheet valuing goodwill and other intangible assets at $29 million did not provide a clear narrative of the debtor's solvency because intangible assets made up

---

[3]  While Plaintiffs argue Defendant is attempting to keep them from learning the extent of their damages by not fully complying with their discovery requests, Doc. 79 at 11, a response to a motion is not the place to pursue that separate dispute.

the majority of the total assets).  Moreover, intangible assets can sometimes be quantified separately from physical assets.  *ADT LLC v. Capital Connect, Inc.*, 3:15-CV-2252-G, 2017 WL 1426302, at *11 (N.D. Tex. Apr. 21, 2017) ("While it is true that the plaintiffs do not need to specifically quantify any loss of goodwill damages, the plaintiffs must still submit summary judgment evidence.") (citation omitted) (Fish, J.); *see also Winn-Dixie Montgomery, Inc. v. United States*, 444 F.2d 677, 685 & n.13 (5th Cir. 1971) (discussing expert witness' method of calculating the value of corporation's goodwill and intangible assets).  Defendant's motion to compel as to this subject matter is **GRANTED**.

     *C.  Bedrock Sale*

     Defendant next asserts that the Court should order Plaintiffs to provide financial information about the sale of MetroQuartz to Bedrock — the allegedly sham transaction Plaintiffs purportedly falsely reported as revenue — as it underlies his SOX claim and would show the materiality of Plaintiffs' improper "revenue recognition" and their motive for retaliating against him.  Doc. 68-1 at 7, 14-15.  Defendant maintains that despite representing that they have produced all relevant nonprivileged documents, Plaintiffs refuse to produce responsive documents on their Stone Profit Systems ("SPS") and Phocas databases on the ground that they are not required to "create" new documents.  Doc. 68-1 at 15-16.  These discovery requests are embodied in RFPs 3, 8, and 9 and interrogatory 4.  Doc. 68-1 at 14-15; Doc. 68-2 at 5-8; Doc. 68-2 at 22.

     Plaintiffs respond that the information sought is not relevant because (1) Defendant was not involved in the Bedrock transaction, (2) he has never seen the Bedrock documents he requests, and (3) the substantive question of whether a SOX violation actually occurred is not material because SOX covers employees' "reasonable but mistaken belief" that an employer engaged in prohibited conduct.  Doc. 79 at 14-15.  Plaintiffs maintain that, in any event, they have produced over 4,300 responsive documents, including the Bedrock invoices.  Doc. 79 at 15.  However, Plaintiffs contend

they need not "run additional reports through" their SPS and Phocas databases, suggesting that further responsive documents may exist. Doc. 79 at 15-16 n.8 (citing *Mir*, 319 F.R.D. at 227).

The Court finds Defendant's argument compelling on this point. First, the documents are relevant. It is immaterial that Defendant may not have been directly involved in the Bedrock sale and has not seen the documents he requests. Defendant was aware of the Bedrock transaction and discussed its legality with Spiller and Johnson. Doc. 56 at 31. To Plaintiffs' second point, the Court recognizes that a party generally cannot "invoke Rule 34(a) to require another party to create or prepare a new or previously non-existent document solely for its production." *Mir*, 319 F.R.D. at 227. Simply running a search through a database, however, is not the same as "creating new documents." *See* FED. R. CIV. P. 34(a) (providing that a party may request "any designated documents or electronically stored information . . . *stored in any medium from which information can be obtained* either directly or, if necessary, after translation by the responding party into a reasonably usable form") (emphasis added). Defendant's motion to compel the requested documents is **GRANTED**.

### D. SEC Information

Defendant next contends that the Court should order SIC to disclose the information it provided to the SEC so he may clarify the basis of Plaintiffs' defense against his SOX claim. Doc. 68-1 at 17-18, 21 n.13. This discovery request is embodied in interrogatories 22 and 23.[4] Doc. 68-1 at 18-19; Doc. 68-2 at 31-32. Plaintiffs respond that the requested information is not relevant, and, in any event, the interrogatories are not properly framed because Defendant did not request "all documents" pertaining to this subject. Doc. 79 at 16-17.

---

[4] Defendant also argues that Plaintiffs did not object to Interrogatory No. 22 or 23 on the grounds of relevance and therefore waived that objection. Doc. 81 at 8. This is not accurate, however, because Plaintiffs submitted their discovery responses with a specific reservation of that and other grounds for objection. Doc. 68-2 at 21.

In reply, Defendant maintains the information is relevant because (1) if Plaintiffs' disclosures to the SEC are different than their defense in this case, the disclosures support Defendant's retaliation claim and (2) any factual information Plaintiffs submitted to the SEC to refute Defendant's allegations is relevant to the nature of Plaintiffs' defense. Doc. 81 at 8.

First, Plaintiffs are reading Defendant's interrogatory too narrowly. Both interrogatories plainly request that Plaintiffs "[i]dentify all disclosures you made to the SEC . . . ." Doc. 68-2 at 31-32. Moreover, the SEC disclosures are relevant to Defendant's SOX claim for essentially the reasons he states. Defendant's motion to compel regarding interrogatories 22 and 23 is **GRANTED**.

### E. Plaintiffs' EBITDA Figures

Next, Defendant asserts that the Court should order production of Plaintiffs' EBITDA figures for the fourth quarter of 2017 and for 2018 because this may evince their motive for selling MetroQuartz to Bedrock and then retaliating against Defendant for reporting it. Doc. 68-1 at 22-23. In particular, Defendant claims the financial information is relevant to demonstrate that (1) sales goals and incentive-based bonuses for Plaintiffs' executives led them to undertake the "sham" Bedrock transaction and inflate Plaintiffs' revenue and (2) if the 2017 EBIDTA figures were corrected, they would have had to repay their bonuses. Doc. 68-1 at 7-8. These requests are embodied in RFPs 10 and 29. Doc. 68-1 at 22; Doc. 68-2 at 8-9, 19. Plaintiffs respond that the EBITDA figures are proprietary information and irrelevant, and Defendant cannot use those figures to make *post hoc* rationalizations to support his SOX claims. Doc. 79 at 17.

Upon consideration of the law, the arguments, and the parties' briefs, the Court finds Defendant's requested discovery to be relevant for the reasons he states. Moreover, to the extent the discovery contains "proprietary information," the protective order contains an "Attorneys' Eyes Only" provision which will adequately shield the documents. *See* Doc. 34. Defendant's motion is **GRANTED** in this respect.

*F. Identification of Documents*

Next, Defendant argues that the Court should order Plaintiffs to specifically identify which responsive documents pertain to which discovery requests because they "dumped documents" on Defendant without the required information. Doc. 68-1 at 26-29. Plaintiffs maintain that (1) they produced the discovery, organized by custodian, in the way they keep the documents in the ordinary course of business and (2) they have already indexed the 11,500 documents they produced to Defendant twice. Doc. 79 at 17-18.

The Court finds that Plaintiffs' argument on this point has merit. A review of their indexes reveals that they have adequately identified responsive documents to both Defendant's RFPs and interrogatories. *See* Doc. 79-5 at 2-7. Given the volume of discovery, Plaintiffs' method is reasonable. *See, e.g.*, *M3Girl Designs, LLC v. Blue Brownies, LLC*, No. 3:09-CV-2390-F, 2011 WL 13128965, at *5 (N.D. Tex. Aug. 31, 2011) (Furgeson, J.) ("Rule 34(b)(2)(E)(ii) requires that [] electronically stored information to be turned over 'in a form or forms in which it is ordinarily maintained or *in a reasonably usable form or forms.*'") (emphasis in original). Thus, Defendant's motion is **DENIED** in this respect.

*G. Attorneys' Fees*

Finally, Defendant seeks reimbursement of the reasonable attorneys' fees and expenses he incurred in filing this motion. Doc. 68-1 at 29. Plaintiffs oppose an award, arguing the motion is meritless. Doc. 79 at 19.

Rule 37 provides that if a motion to compel is granted, the court must order the party whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses and attorneys' fees incurred in making the motion. FED. R. CIV. P. 37(a)(5)(A). The court must not order this payment, however, if (1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the

opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of expenses unjust.  *Id.*

Under the circumstances presented here, the Court finds that an award of attorneys' fees in Defendant's favor is appropriate.  Plaintiffs' only argument is that Defendant's motion was meritless, but that is plainly inaccurate given that he prevailed on nearly all of the issues presented.  To that end, the parties are **DIRECTED** to confer in an effort to reach agreement about the amount of fees that are owed in connection with the issues discussed herein.  If the parties are unable to reach agreement within 21 days of the date of this order, Defendant may submit a motion for attorneys' fees with appropriate supporting documentation.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's *Motion to Compel Discovery Responses and for Attorneys' Fees and Costs*, Doc. 68, is **GRANTED IN PART**.  **Plaintiffs' discovery/supplemental discovery responses are by May 2**.

Further, the parties are **DIRECTED** to file a joint status report **by April 21, 2022,** identifying issues that have been rendered moot as well as those that still require disposition as pertains to *Plaintiff's Motion to Quash Defendant's Third Party Subpoenas to CNM LLC, Sycamore Valuation, Grant Thornton LLP, Gordon Brothers Asset Advisors, LLC, and SCA Transaction Services LLC*.

**SO ORDERED** on April 11, 2022.


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE